IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WENDY ANDERSON HALPERIN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 2020 CV 07616 |
| ) | |
| DRAWN TO DISCOVER, LLC, et al., ) | Hon. Harry D. Leinenweber |
| ) | |
| Defendants. ) | |

**PLAINTIFF LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

Now Comes Plaintiff Wendy Halperin and pursuant to Rule 56.1 provides the following:

1. For over 10 years, prior to DTD, Wendy Halperin single handedly authored and illustrated over 1,000 drawing lessons for pre-k - second grade and sold this curriculum and teaching manuals to elementary schools in Michigan, Illinois, Indiana, New York, Ohio, Colorado and Texas. Since 2006, Halperin's curriculum has been called Drawing Children Into Reading (DCIR). PX 1 A, B, C.

2. Halperin had 25 years drawing in school assemblies because of her work in illustrating published children's books. Those experiences made her familiar with the poor handwriting, the poor fine motor skills and the need for these drawing lessons. In 2006 it was her idea alone to create this research and body of work. To this day she continues to work as always with teachers, administrators and students to create new lessons. PX 2 & PX 27.

3. Halperin observed poor fine motor and poor handwriting. Halperin Deposition p.25; 1-24 – PX 3.

4. Halperin single handedly created lessons to improve fine motor and handwriting. Halperin Dep. p.26: 1-15 – PX 3.

5. Halperin marketed and sold her curriculum from 2008 to date (Printed Teacher Manuals, Step by Step Book, Notebooks & DVD's). PX 4 and PX 1A.

6. DCIR became a 501c3 non-profit on April 16, 2015, for the sole purpose of helping children through Wendy Halperin's drawing lessons that support literacy. Fed. IRS EIN Notice. PX 5.

7. Wendy Halperin visited schools primarily to teach children and teachers to draw and how to incorporate her curriculum into the classroom. Halperin Dep. p.70: 5-13, PX 3.

8. Halperin has registered copyrights on over 1,000 drawing lessons that were used in the video lessons - PX 1C Certificate of Registration of Copyrights No. TX9-078-944.

9. On September 13, 2016, Goodman email to Halperin: "…thanks for the rental of your home again this past Labor Day… thank you so much for showing Portia, TJ and me the wonderful setup you have for DCIR…Sharing the program and vision, and then giving us the access and program was so wonderful!…He is already implementing the thumb and improving his grip and control!…"So this brings me to my final question......, would you ever consider licensing the program and turn it into an online individual subscription service?" Sam and I would love to "mock" up a video membership/subscription site for you to consider. We believe we could drive amazing support to your none-for-profit through a for-profit platform that engages individual families." PX 6 and Goodman Dep. p.14; 13-19 PX 7.

10. Goodman was employed by Revolt Media, a digital platform for news and entertainment for four years, and was "Vice President of Sales and Marketing." Goodman Dep. p.38; 9-16; PX 7 Goodman had no experience in starting a business or in the field of education. Goodman Dep. 11; 3-10.

11. In the original "mock" up Goodman and Patel sent to Halperin, called "Learn with Wendy", all images and quotes were authored and provided to them from Halperin's curriculum and acknowledged "Wendy's early childhood interactive enrichment video lessons developing fine motor skills in cognitive growth." as its basis - PX 8.

12. As stated, "Goodman spent nearly 25 years sitting in many desks and roles within the advertising and marketing industry." and in his DePauw College Alumni article, Goodman is cited as ".. a marketer… and has worked in marketing and advertising since graduating from DePauw." The DePauw article author, Mary Dieter reported "...Goodman says. He is confident enough that he quit his job and is devoting full time to Drawn to Discover…" PX 9 and PX 10.

13. The Operating Agreement, that Goodman prepared for an Illinois LLC, made no reference to the videos that Halperin created or the ownership or copyrights to the videos. This signed Agreement was the only document relating to the governance of the company and the respective rights of the parties/members that Halperin, Goodman and Patel signed. The OA was amended several times, to add additional partners/members, but none of these changes or Amendments refer to the videos or the copyrights or her assignment of any of her Intellectual Property Rights. PX 11.

14. Halperin refilmed her videos to improve the audio and video quality. She added all script and drawings with no assistance or participation from any other person or source. The refilming was based on her work done at Drawing Children Into Reading. Goodman Dep. p.20; 5-14 PX 7; PX 27.

15. Goodman recruited Amador Valenzuela, a friend of Goodman's to assist in camera set up and editing. Goodman Dep. p.16; 7-14 PX 7.

16. All of the DCIR video lessons that I refilmed for DTD, and a majority of the video lessons that I created after DTD was formed, were based on drawings covered by my copyright registration. PX 27 Wendy Declaration for Vimeo.com for access and comparison:
User Name: dcir.wendy@gmail.com Password: DCIR2helpkids!> 9 Film #732239366 of 2015 Halperin's "Honeybee Lesson" with copyright designation and Halperin DTD "Honeybee Lesson" film with her follow up editing notes to DTD. PX 12 A

17. All of the DCIR video lessons that I refilmed for DTD and a majority of the video lessons that I creased after DTD was formed were based on drawings covered by my copyright registration.
Vimeo.com for Access and comparison:
User Name: dcir.wendy@gmail.com Password: DCIR2helpkids! >9 Film #732237080 of Halperin's 2014 "Pencil and Mouse Lesson" version with copyright designation and Halperin DTD Pencil and Mouse 2018 refilmed lesson. PX. 12 B.

18. Upon working with Goodman, Wendy began refilming her video lessons to provide a higher resolution filming of her work period once the lesson was completed, Wendy would provide the editing team with her editing notes on items that needed to be fixed or updated. Lawson Declaration PX 16:
Vimeo.com for Access:
User Name: dcir.wendy@gmail.com Password: DCIR2helpkids! >9 Film #732236130 Halperin provided editing notes to DTD for nearly every raw film delivered to DTD. PX 13.

19. After editing Halperin's raw films as directed, Valenzuela had his third party editors add the "intro" five second sequence of musical notes as background to crayons spilling from a box at the beginning of each lesson video and a five second the "outro", sequence of musical notes as background to an animated "Thank you", at the end of each lesson video. They were added as a Marketing Tool. PX 14; PX26 & PX 27.
Vimeo.com for Access:
User Name: dcir.wendy@gmail.com Password: DCIR2helpkids! >9 Film #764992273.

3

20. Halperin filmed over 700 lessons Sept 2016-Oct 2019. Only 547 were on the DTD website. This reference is a Visual Map of the 547 lessons created by Halperin. PX 21 Visual Map PX 15 of Holley PX 16

21. I filmed every lesson by myself, in my studio in South Haven, Michigan with no input or assistance from any other person. I researched every lesson by myself. I planned every lesson before I filmed it. I had a sketch and research notes so that I knew exactly what I was going to draw and what I was going to talk about during each lesson. I alone created content and made content decisions. I did not collaborate on any of my content with the members of DTD, and I rejected content suggestions. All of the fine motor skill goals were designed by me based on my research. PX 27.

    "So it's correct that the programs were developed by Wendy or is that not a correct statement? Answer: I would say this was all based on her on the program that she was creating that she had worked on at Drawing Children into Reading. Goodman Dep. p.46; 2-13 PX 7.

    ""Did they do my script? No. Did they tell me what to draw? No. Did they do a drawing? No. Did they put the films on a hard drive? No. Did they push the camera? No. Did they decide why the drawing should exist in the first place? No… They had no part of any content ever." P 49; 3-11, PX 3.

    Screen Shot- The Story from the DTD website states "Our video programs were developed by Wendy Anderson Halperin. Wendy shared S.T.E.A.M literacy work she developed through her no-profit Drawing Children Into Reading". PX 23.

22. Goodman acknowledged Halperin's authorship in a 2018 interview: "The biggest concern with a start-up is content, "and content was easy." Halperin "just cranked video after video, after video… it was just about her." She's a machine." PX 9 – DePauw Alumni Article, PX7. All the Video Lessons I sent to Defendants were designed to play to children, or a teacher could learn the lesson and draw it herself. I told the teachers that if a lesson was giving them trouble or they just did not want to draw the lesson, play the film. The videos were never designed only for teachers. PX 27.

23. On October 7, 2019, Goodman emails: "We are no longer able to pay bills on behalf of Drawn to Discover. Bills to keep the site running are coming due in next few weeks. If they are not paid, the site will no longer work." PX 17A.

24. Finding an investor. July 2019 NWS "Our play is NWS in Indy." PX 20.

25. On August 17, 2019 John Baker, NWS negotiator for the potential investment in DTD, wrote to Goodman "...the IP… would likely be the only marketable assets in a liquidation situation." PX.19

4

26. In July, 2019 Halperin texted Goodman "I will need to protect the copyright of the content if we get into an investment arrangement with NWS. I will not agree to anything that does not protect artwork/lessons. So, just keep that in mind as you negotiate our future. "To which Goodman replies "That won't be a problem. It doesn't work that way anyway. Plus, the content isn't worth anything to the investor unless we make the company makes money." PX. 20.

27. In September 2019, Goodman writes "NWS will not invest if we sign a licensing deal and we do not own the content. So, we are not going to consider the licensing deal." PX. 21.

28. As of June 22, 2023: Office of the Secretary of State (ilsos.gov) File Number 05968852. Entity Name: Drawn to Discover LLC. Status: Involuntary Dissolution on Friday, 12 March 2021.

29. In the course of negotiations with NWS, Goodman had engaged an attorney to, among other things, opine that "all the educational content currently available on the DTD website" were joint works under the copyright laws. The attorney sent an opinion letter (PX 25) to Halperin on behalf of DTD's members asserting that position. Goodman testified ,when asked at his deposition whether he believed that the Video Lesson were joint works, "Is that correct? A. No. I believe everything was owned by Drawn to Discover and still do…Q …but do you believe that's because they are joint works under the copyright law? A. No. I believe they are – I told you I don't believe they are joint works. I believe they're owned by Drawn to Discover." PX 7 Goodman Dep. p.237; 15-23, p.238; p.1.

30. September 18th Halperin had a license agreement drafted and sent it to the DTD members. PX. 22A & 22B.

31. Halperin wrote to Goodman that she objected to amending the Operating Agreement to reduce the percentage of votes required to approve corporate decisions from unanimous to 51% as Halperin would lose control of "not only her intellectual property , but my voice in the company." Halperin Dep. PX. 3 p.91; lines 16-18.

32. Goodman did not ever receive a written assignment from Halperin of any ownership of copyright for her work. PX 7 Goodman Dep. p.36; 7-14; p.37 ; lines 7-14.

33. Goodman had no experience in the field of Education. PX 7 Goodman Dep. p.11; 6-10 ;

34. The revenue we generate could then help you support her DCIR mission of getting the program in front of more and more teachers and schools across the country. Goodman Dep. p.46; 16-24; PX 7.

35. Good Sami LLC was a joint venture with Samir Patel and initially a "Member" of DTD, but never made any money independently and was dissolved by Patel and Goodman. PX 7 Goodman Dep. p.37; 21-24; p.38 ; lines 1-7.

36. Pitching NWS as Investor, PX 7 Goodman Dep. p.120; lines 19-24, p.121 ; lines 1-5.

37. As stated in Halperin Declaration: I approved adding a jingle to the beginning of my films for marketing purposes. I also approved the thank you at the end of a film. I did not intend that the jingle would be part of the lesson, and it did not appear to be a part. Adding a jingle did not have any effect on my content or my philosophy or my goals for children. It was merely a marketing tool. DTD was initially designed to market my lessons to parents and their children. PX 27.

38. Holley Lawson Declaration PX 16.

39. The DTD website states " Our video programs were developed by Wendy Anderson Halperin. Wendy shared S.T.E.A.M literacy work she developed through her non-profit Drawing Children Into Reading". PX 23.

40. "The work began over 15 years ago with the lead author initially teaching guided art lessons to kindergarteners... Upon seeing the pervasive lack of ability to properly hold a pencil in order to draw proficiently... It was apparent that instructions on proper pencil grip and development of drawing and writing skills were needed. From those needs, a curriculum featuring weekly drawing lessons was born and implemented… those initial teaching experiences then grew into a nonprofit program *Drawing Children into Reading* with the curriculum encompassing lessons for preschool through 2nd grade. The lead author continued teaching weekly lessons in classrooms as well as training other teachers….the program expanded to include several schools across several states. … curriculum was now available through the online platform, Drawn to Discover. David Barrett's White Paper PX 24."