IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WENDY A. HALPERIN,<br><br>                Plaintiff,<br><br>      v.<br><br>BRIAN T. GOODMAN and DAWN TO DISCOVER, LLC,<br><br>                Defendants. | Case No. 20 C 7616<br><br>Judge Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Wendy A. Halperin's Partial Motion for Summary Judgment for Count I of her two-count complaint against Defendants Brain T. Goodman and Dawn to Discover, LLC, seeking declaratory judgment that she outright holds the copyright of educational video lessons (Count I) and for the dissolution of DTD (Count II). For the reasons herein, the Court GRANTS Plaintiff's Motion.

### I. BACKGROUND

The following facts are both undisputed and supported by admissible evidence:

For most of her adult life, Plaintiff Wendy A. Halperin ("Halperin") has drawn and taught children. Her decades of experience led to observations that children had poor handwriting and lacked fine motor skills. After hearing an NPR story which discussed a connection between brain activity and fine motor skills, Halperin created drawing lessons designed to improve handwriting and fine motor skills generally. Since 2008, Halperin

single-handedly authored hundreds of drawing lessons for pre-school aged through first grade children, in addition to curriculum and teaching manuals which she sold to schools in Michigan, Illinois, Indiana, New York, Ohio, Colorado, and Texas.

In 2015, Halperin established the non-profit Drawing Children Into Reading ("DCIR") to support her literacy program. Eventually, Halperin, by herself, created and provided schools with video recordings that incorporated her drawing lessons. By 2016, Halperin had created more than 600 separate lessons for children in preschool through second grade with plans for expanding her program by creating additional drawing lessons for children in third grade and above.

In the summer of 2016, Halperin met Defendant Brain T. Goodman when Goodman rented Halperin's home in Michigan for a family vacation. Halperin introduced Goodman and his son to her drawing program and gave Goodman DVDs of her kindergarten drawing lessons to take home for his son.

Goodman was impressed. Shortly after his visit, he e-mailed Halperin, asking if she "would ever consider licensing the program and turn it into an online individual subscription service?" (Dkt. No. 108; Pl. Rule 56.1 Statement, Exhibit ("PX") 6.) At the time, Goodman was Vice-President of Sales and Marketing at Revolt Media, a digital platform for news and entertainment.

Halperin liked Goodman's proposal, which posed to generate income to help support DCIR's mission. After some fine tuning and with the addition of Goodman's business partner, Samir Patel, Goodman, Halperin formed Drawn to Discover, LLC ("DTD"). Halperin was to provide the content of the video lessons, Patel was to develop

the website and technological support systems that were needed to make the videos available on the internet, and Goodman was to oversee marketing and the company's financing.

Goodman prepared an Operating Agreement for an Illinois Limited Liability Company with Halperin and Goodsami, LLC, Goodman's and Patel's joint venture, as members, with each owning 50% of the company, and as co-managers. This agreement was the only document relating to the governance of the company and the respective rights of the parties that Halperin, Goodman, and Patel signed. The Agreement made no reference to the Video Lessons that Halperin created and refilmed for DTD's use or ownership of the copyrights to the video lessons.

In light of technological advancements, Halperin, Goodman, and Patel agreed that Halperin would refilm the video lessons to improve the audio and video quality. In September 2016, Halperin began refilming video lessons from her library of more than 600 video lessons she had created for DCIR. Once Halperin completed her lessons, she forwarded the video to Patel, Goodman, and Amador Valenzuela, a video and film technician recruited by Goodman. Halperin also sent with these videos her editing notes (*e.g.,* eliminate background noise or interruptions). Valenzuela also added a five second intro and outro to each lesson, which included simple musical notes with a generic background for the intro and a "Thank You" message at the outro. (PX13). There were otherwise no further edits made after Halperin forwarded the videos. *See, e.g.,* (PX7; Goodman Depo., 20:5-23, 16:18-22). By mid-2019, Halperin had filmed and delivered to

DTD more than 700 video lessons, 547 of which were edited and uploaded to the DTD website.

By Fall 2019, DTD ran out of money. To salvage the endeavor, Goodman identified potential investor National Wine & Spirits, Inc. ("NWS"). When NWS recognized that DTD's only marketable assets were Halperin's video lessons, NWS made clear that they would not invest in DTD unless Halperin executed appropriate documents assigning her intellectual property rights to DTD. Halperin objected and never agreed to assign her copyrights in the video lessons to DTD, but she did propose a Licensing Agreement. This, too, was never signed. Eventually, the DTD videos were uploaded to YouTube by Defendants without Halperin's knowledge or consent.

The question now is whether the videos are jointly owned or if Halperin is the sole holder of their copyright. As explained below, the Court finds in Halperin's favor.

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons, Co.,* 42 F.3d 439, 443 (7th Cir. 1994). The non-moving party must then set forth specific facts showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 252 (1986). A

genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986).

The Court must draw every reasonable inference from the record in the light most favorable to the non-moving party. *Haefling v. United Parcel Serv., Inc.,* 169 F.3d 494, 497 (7th Cir. 1999). The non-moving party must support its contentions with admissible evidence and may not rest upon mere allegations in the pleadings or conclusory statements in affidavits. *Celotex,* 477 U.S. at 324. The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. The production of only a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Anderson,* 477 U.S. at 252.

### III. ANALYSIS

At the outset, Defendants seem confused about the scope of the legal issues here. They spuriously argue that Count I of Halperin's Complaint seeking declaratory judgment is moot because the copyright dispute here does not cover the videos Halperin produced before the commencement of DTD's operations. Citing to various irrelevant authority in their Opposition to Plaintiff's Motion for Summary Judgment, Defendants urge the Court to dismiss Count I of Halperin's Complaint because Halperin's copyright in her prior works is unaffected. In so arguing, Defendants drastically misconstrue the legal question at issue. As stated above, Halperin seeks declaratory judgment that she alone holds the copyright to the videos she *refilmed* for DTD, since these are the videos that Defendants

uploaded to YouTube. Hence, this dispute concerns whether collaborative efforts between Halperin and DTD transformed the videos into "joint works," thereby entitling DTD to a share of their copyrights. Contrary to Defendants' contention that these videos are irrelevant and unaffected, these videos are at the very center of the dispute; the Court will assess whether these videos constitute "joint works" under the Copyright Act of 1976 or if Halperin is the sole owner of these works.

### A. Intent

Works are "joint works" under the Copyright Act of 1976 only if the parties intend to be joint authors at the time the work was created. Contributions to the works must also be specifically identified as independently copyrightable. *Erickson v. Trinity Theater, Inc.,* 13 F.3d 1061, 1072 (7th Cir. 1994).

There is no evidence that Halperin and Defendants intended to be joint authors of the lessons. First, none of the video lessons, and in fact nothing in the record, credits Defendants and Halperin as "co-authors," either directly or indirectly. *See Janky v. Lake County Convention and Visitors Bureau,* 576 F.3d 356, 362 (7th Cir. 2009) (finding evidence of intent to jointly author song because Plaintiff named Defendant a co-author on various sources, including its copyright registration, and Defendant "wielded considerable control" over final song); *see also Beloit Corp. v. C3 DataTec, Inc.,* 1995 WL 674602, at *7 (E.D. Wisc., Aug. 23, 1995) (finding "overwhelming evidence" of joint intent to author manuals based on proposal outlining joint responsibility to write new text, provide relevant outlines, review and correct manuals, and generally oversee entire production of manuals). Instead, the website and other promotional materials developed

by Defendants credit only Halperin as the author of the videos. The website highlights "Ms. Wendy's" work, and it includes a sign-up portal for "Wendy's Courses" and another webpage which solicits customers, asking "who is working with Ms. Wendy?" (PX8; Dkt. Nos. 108-111); *contra Janky,* 576 F.3d at 362 (7th Cir. 2009) ("crediting another person as a co-author is strong evidence of intent to create a joint work.")

And if it were not clear enough already, Goodman plainly answered, "No," when asked whether it was his position that all videos and materials were joint works. (Id., at 237:15-18; see also 12:4-7). Moreover, in Goodman's initial pitch e-mail he sent to Halperin, Goodman asked Halperin if she would "ever consider *licensing* the program and turn it into an online individual subscription service," further militating an inference of the requisite intent. (*Id.*, PX6) (emphasis added). Goodman then confirmed in his deposition that his initial intent was to license Halperin's DRIC program and turn it into an online individual subscription service (PX7, Goodman Depo., 20:5-23; 14:13-19).

Thus, there is not even a scintilla of evidence that the parties possessed the requisite intent. Summary judgment on this point is warranted.

### B. Copyrightable Contributions

Though the Court's finding above renders it unnecessary to assess copyrightable contributions, the Court also briefly finds that Defendants failed to make any copyrightable contributions. It is obvious that Defendants collaborated with Halperin on their DTD endeavor. But collaboration alone is insufficient — "[a] collaborative contribution will not produce a joint work, and a contributor will not obtain a co-ownership interest, *unless the contribution represents original expression that could stand on its*

- 7 -

*own as the subject matter of copyright.*" *Erickson,* F.3d at 1070 (quoting Paul Goldstein, Copyright: Principles, Law, and Practice § 4.2.1.2, at 379 (1989)) (emphasis added). Hence, mere ideas, suggestions, or directions are insufficient. *Id.* at 1071; *see also Beasley v. Commonwealth Edison Co.,* 2013 WL 4564857, at *6 (N.D. Ill., Aug. 28, 2013) ("Ideas, refinements, and suggestions" by themselves not independently copyrightable contribution).

The record shows that Defendants made zero contributions to the video lessons aside from editing notes to, for instance, refilm a scene without a phone ringing in the background. (PX8; Dkt. No. 108-11). In an interview from 2016, Goodman seemingly confirms his hands-off role in creating the videos, where he is quoted to say, "As a startup, the biggest thing that you worry about is content, and content was easy. It was just about [Halperin]. She's a machine." (PX9; Dkt. No. 108-12). And again, in his deposition, Goodman removes any doubts that his contributions were indeed limited to refinements and suggestions, declaring that he never provided Halperin with any text or drawings used in the film. (Goodman Depo., 20:5-23; 16:18-20). The only content DTD produced was limited to severable 5-second intros and outros, as well as summary descriptions of the videos Halperin had already produced (Halperin would routinely write summaries, too). (*Id.*, at 18:21-19:1 ("Any – any of the intros, any of the, you know, the lower third screens that came up, I wrote. Any of the descriptions of the videos – Holley and Wendy sent us many, you know, descriptions of all these videos, but they were literally descriptions of videos."); 32:7-10 ("Any of these descriptions would come through

for — being forward on were not usable descriptions that we could put on a website. So, they would have to all be rewritten.").

These admissions contradict with Defendants' new declaration that the "production, editing, drafting and rewriting of the raw footage and lessons was a collaborative effort by all DTD members." (Dkt. No. 110; Defs.' Mot. in Opp., at 8). These declarations, offered for the very first time in Defendants' Reply brief, come with no explanation for this contradiction. Under these circumstances, *Beckel v. Wal-Mart Associates, Inc.,* applies, which explains that:

> Affidavits, though signed under oath by the affiant, are typically and here written by the affiant's lawyer, and when offered to contradict the affiant's deposition are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy.

301 F.3d 621, 623 (7th Cir. 2002). *See also Bank of Ill. v. Allied Signal Safety Restraint Systems,* 75 F.3d 1162, 1168-69 (7th Cir. 1996) ("If such contradictions were permitted . . . 'the very purpose of the summary judgement motion — to weed out unfounded claims, specious denials, and sham defenses — would be severely undercut.") (citation omitted).

The Court accordingly gives zero weight to Defendants' new, unexplained, and contradictory declaration. Moreover, the Court is convinced there is no factual dispute that Defendants failed to make any "concrete expressions" which are copyrightable. *Janky,* 576 F.3d at 363. Halperin is again entitled to summary judgment on this element.

Defendants make a last-ditch argument (and yet another misrepresentation of the law) when they argue that Halperin indirectly and voluntarily "transferred possession and

ownership" of the videos. (Dkt. No. 110; Defs.' Mot. in Opp., at 11). They claim that it is "well-settled" that an assignment can be inferred from a course of conduct and need not be in writing, citing to *Dave Grossman Designs Inc. v. Bortin,* (*Id.*, at 13); 347 F. Supp. 1150, 1154 (N.D. Ill. 1972). *Bortin* was published in 1972 — that is, it predates and contravenes Congress's enactment of the Copyright Act which today governs and strictly mandates that copyright transfers are "not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(A). The Court both rejects this argument and reminds Defendants of their duty under Rule 11(b) to make only reasonable and warranted representations of law to the Court.

### IV. CONCLUSION

For the reasons stated herein, the Court GRANTS Plaintiff's Rule 56 Motion for Summary Judgment (Dkt. No. 106).

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 1/30/2024